## Case No. 1,640.

BOON et al. v. The HORNET.

[Crabbe, 426.] [1]

District Court, E. D. Pennsylvania.   May 26, 1841.

ADMIRALTY—PLEADING—MARITIME LIENS—MATERIALS—DOMESTIC VESSEL—ADMIRALTY PRACTICE—LIEN BY STATE LAW.

1. The libel should always show the jurisdiction of the court.

2. This court takes jurisdiction of claims for work and materials furnished to a domestic ship, because the law of the state of Pennsylvania gives a lien on the ship for such supplies.

3. Where a canal boat, built and used for service in the interior canals of Pennsylvania, and not in tide water, was hauled on shore and repaired at a part of the river Schuylkill where the tide ebbed and flowed, this court had no jurisdiction of a claim for such repairs.

[See Reppert v. Robinson, Case No. 11,703.]

4. By the general maritime law no lien is given on a domestic vessel for work or materials furnished to her.

5. There can be no suit in rem, unless there is a lien on the thing sought to be charged.

[Cited in The America, Case No. 288.]

6. When a case comes rightfully into a court of admiralty, it is to be conducted, tried, and decided, according to the usage and practice of that court.

7. Where the law of a state gives a general lien on ships for all debts incurred on their account, this court will take cognizance, under such statute, of all contracts or charges of an admiralty or maritime nature, notwithstanding no lien was given therefor by the general maritime law, but not of contracts or charges not of an admiralty or maritime nature, although a lien may be given therefor by such state statute.

[Cited in Marsh v. The Minnie, Case No. 9,117; The Richard Busteed, Id. 11,764; The Avon, Id. 680; The Rapid Transit, 11 Fed. 332.]

This was a libel [by William Boon and Henry L. Boon, trading as William Boon & Son, against the canal boat Hornet, Samuel Bisbing, owner] for work and materials. It appeared that the boat Hornet was built and used for the navigation of the Schuylkill canals, and not in tide water; that, having been brought to Philadelphia, she was hauled on shore at that part of the river Schuylkill where the tide ebbed and flowed; that while in that situation the libellants furnished certain work and materials necessary to her repair; and that there was due, on that account, $112 63. The respondent pleaded to the jurisdiction. [Libel dismissed.]

The case came on for a hearing, before Judge HOPKINSON, on the 22d May, 1841, and was argued by Vandyke, for the libellants, and H. Hubbell, for. the respondent.

Against the jurisdiction were cited: Davis v. The New Brig [Case No. 3,643]; Thackeray v. The Farmer of Salem [Id. 13,852]; and Dunl. Adm. Pr. 42, 43, 54. For it were cited Dunl. Adm. Pr. 55; Peyroux v. Howard, 7 Pet. [32 U. S.] 324, 325, 341; and the

act of 13th June, 1836, relating to the attachment of vessels (Dunlop, Laws, 3d Ed., 681).

HOPKINSON, District Judge. The libel in this case sets forth that the libellants have performed certain work and labor, as ship carpenters, and furnished certain materials in and about repairing, reconstructing, and fitting a certain vessel or canal boat, called "The Hornet," now lying and being in the port of Philadelphia in the river Schuylkill, upon the faith of the said vessel; that the whole amount chargeable thereon was $129.-88, of which there is now due and unpaid the sum of $112 63, and prayer is then made for process of attachment against the said vessel. This libel was obviously drawn in great haste, and has none of the averments usually and purposely introduced to show the jurisdiction of this court in the premises. There is no allegation that the boat ever has been, or is ever intended to be, used on the high seas; or in waters within the ebb and flow of the tide; or that her employment has been, or was to be, of a maritime character; or where the work was done and the materials furnished to her. The libel is the commencement of the pleadings, and although, in the admiralty, mere form is not strictly attended to, and amendments are liberally allowed to correct errors, yet, more attention ought to be paid in setting out the complaint of a party asking for the process of the court. This court takes jurisdiction of work and materials furnished to a domestic ship, because the law of the state gives a lien on the ship for such supplies, but the libel in such cases, according to the forms known to the court, states that the work and materials were necessary in building, furnishing and equipping the vessel for her navigation on the high seas. In the case of a foreign vessel, the jurisdiction of the court is, in a like manner, shown, on the face of the libel, by the allegations that the work and materials were done and furnished to render the ship seaworthy and competent to proceed on her voyage; that without them she could not safely have proceeded to sea, &c. In both of these cases the employment of the vessel is shown to be maritime, and the repairs to have been necessary to enable her to be so employed.

The answer of the respondent, besides matters of defence on the merits, has brought the question of jurisdiction directly before the court, and that must be disposed of before we can take up the other matters. The respondent is the owner of the boat, which, he says, is a canal boat, and so she is denominated in the libel; that she is of the burthen of about forty or forty-five tons; that she never was built, designed, or intended to navigate the high seas, nor has ever been used for such purpose, but only for a regular canal boat to navigate the Schuylkill canals; and that, as such, she is not a subject for the jurisdiction of this

court. No denial is made on the part of the libellants to these allegations, but they are admitted to be true, and the case has been argued upon them. The question then is, whether such a boat is a subject of the jurisdiction of this court? Can the libellant have the remedy he seeks for in this court, for the work and materials furnished? In the case of Thackeray v. The Farmer of Salem [Case No. 13,852], I had occasion to give a very careful examination to the question of the jurisdiction of this court in cases of boats actually employed in our waters, within the ebb and flow of the tide, but whose employments could not, on the most liberal construction, be considered as partaking of a maritime character. It was there assumed that waters within the ebb and flow of the tide are to be considered, on the question of jurisdiction, as the sea, but it was held that in cases of contract, locality is not enough to give jurisdiction, but that the service must also be essentially a maritime service. The subject-matter of the contract generally determines the question of admiralty and maritime jurisdiction; the contract must be maritime, that is, a contract which relates to the "navigation, commerce, or business of the sea;" and includes, "among other things, contracts for maritime service in the building, repairing, supplying, and navigating ships." It is clear that, according to the principles affirmed in that case, this court could not take jurisdiction of a contract for services performed on board the canal boat Hornet, on her passages to and fro in the canal, as for the wages of her hands; not only because those services were not performed on the high seas, nor on waters within the ebb and flow of the tide, but also because the services were in no respect of a maritime character; they had no relation to the "navigation, business, or commerce of the sea," in the most enlarged meaning of the terms. Can, then, the court have jurisdiction over a contract for work and materials never intended to conduce to any such service, nor to be used or employed on the high seas? In the case of a contract with seamen, the service must be substantially performed on the high seas, which, by our decisions, is satisfied if it be within the ebb and flow of the tide. This, in the case of a person employed in and about the navigation and safety of a ship, is a maritime service; and the admiralty has jurisdiction of it although the contract be made on the land. But even this locality of the service will not always be sufficient for the jurisdiction; we must also look to the subject-matter of the contract, that is, whether the service is truly and essentially maritime; had it relation to the navigation of the sea, or of waters within the ebb and flow of the tide? Was it, in any sense, a maritime labor or service? Had it any connexion with, or relation to, maritime affairs? Locality is always necessary to jurisdiction,

—the service must be on the high seas; but locality is not always enough,—the subject of the contract must also be maritime. In the case of The Farmer of Salem, it was said, "the circumstances of any given case, the kind of vessel, the business she is engaged in, the places between which she is navigated, may make it apparent that it can not be one for the cognizance of the admiralty." This is the law even where the service was performed on waters within the ebb and flow of the tide; and the case is still stronger where the locality of jurisdiction is also wanting; and the boat in question never has floated, and is never intended to float on the tide.

The libel alleges that the work and materials put upon the Hornet were furnished to her while she was lying at the port of Philadelphia in the river Schuylkill. This is the only intimation we have that the service was actually done at a place where the tide flowed, nor is it said whether the limits of the port of Philadelphia do not go beyond the reach of the tide in that river. The fact seems to have been, as it appeared on the argument, that this boat was hauled up on the shore of the Schuylkill, at a place where the tide did flow. And this is the only circumstance on which it is attempted to found the jurisdiction of the court. The work was done at a place where the tide flowed. Can this give jurisdiction? I think not. It is the place where the vessel is to be employed, the service in which she is to be engaged, that is material to decide whether the contract for that service was maritime or not. The contract was made on shore; the work was done on shore; it was to repair, fit, and equip the boat for an employment that had no ingredient of a maritime character in it, and, after a careful consideration of the case, I cannot perceive anything in it on which I can found the jurisdiction of this court over the contract or service in controversy.

The act of assembly of this state has been referred to by the counsel for the libellant. It does not, in my opinion, help his case. By the general maritime law, no lien is given on a domestic vessel for work or material furnished to her. It is presumed to have been done on the credit of the owner, and not of the ship, and, of course, no proceeding in rem can be had in an admiralty court to recover the money due for them. It has, however, been decided by the supreme court of the United States, that where the laws of a state give a lien on the vessel for such work and materials, then such lien may be enforced by a suit in rem in the admiralty. But it will be enforced there according to the established rules and principles of the admiralty, and according to the jurisdiction properly exercised by courts of admiralty. The act of assembly, as decided by the supreme court, may bring a subject within the admiralty jurisdiction

by attaching to it a circumstance or responsibility, without which the process of the admiralty could not reach it; for there could be no suit in rem, unless there was a charge or lien upon the thing to answer for the debt; but the act of assembly cannot enlarge or regulate the jurisdiction of the admiralty by its own provisions, or make the admiralty jurisdiction coextensive with that which it has thought proper to give to its own courts, or direct the manner of proceeding in such cases. I have decided, in another case, that although the act of assembly will bring a domestic vessel into this court, to answer for work done or materials furnished to her, yet, that when the suit is here, the jurisdiction will be exercised according to the modes of proceeding in the admiralty, and not in the manner prescribed by the act of assembly. I allude to the case of Davis v. The New Brig [Case No. 3,643], where this question was fully discussed and considered. It was then contended that as this court has cognizance of the case by reason of the local law of Pennsylvania, its jurisdiction must be governed and exercised according to the provisions of that local law; that is, as was claimed in that case, by a trial of questions of fact by a jury. I do not think so. It was my opinion, as it is now, that where a case comes rightfully in a court of admiralty, it is to be conducted, tried, and decided according to the usage and practice of that court; that the jurisdiction over the case is not obtained by any grant, express or implied, from the legislature of Pennsylvania, but that it is derived, incidentally, as a consequence of the lien given, by the local law of the state, upon the vessel, for the satisfaction of the debt incurred by building or repairing her. In the case now under our consideration the libellant might have gone with his claim into the state court, and he would have had his trial according to the practice of that court, as directed by the act of assembly; and that court would have had all the power over the case which is granted to it by the law of the state. But he has come here, and must take the power of this court as it is established by the maritime and admiralty law, in cases of suits against vessels for work done and materials supplied for them. Now it is the settled law of the admiralty, that no such suit can be sustained there unless on a maritime contract, for a maritime service; and if the case which has been brought here is not of that description, this court cannot hold jurisdiction of it merely because the law of the state gave a lien on the vessel, which may be enforced in a state court. Lien, of itself, will not always give admiralty jurisdiction, although it will authorize a proceeding in rem, provided the debt to be recovered—the contract to be enforced—be also of admiralty jurisdiction, or maritime in its character. The act of assembly of Pennsylvania makes ships and vessels of all kinds, built, repaired, &c., within the state, liable for all debts contracted for the work done or materials found. Can it be believed that a court of admiralty may assume a jurisdiction so extensive as that given to the courts of Pennsylvania, because the supreme court of the United States have decided that where the law of the state gives a lien on the vessel it may be enforced by a suit in rem in the admiralty? Is the builder or repairer of a boat of any description and for any employment, in the interior of the state, far from any tide water, a batteaux or a mud flat, to come into this court for the recovery of his debt; to claim the jurisdiction of a court whose power, under the constitution, extends to "cases of admiralty and maritime jurisdiction," and no further? Can we stop our inquiry with the fact that the state law gives a lien upon the subject of dispute, and never ask whether the case is one of admiralty and maritime jurisdiction? There can be but one answer to these questions. A lien given by a state law may be enforced by a suit in rem in the admiralty; but it must be such a suit as the admiralty can entertain; in other words, in cases where the contract or service are maritime, or of the "admiralty and maritime jurisdiction," although they are not such as would authorize a proceeding in rem in the admiralty, because there was no lien for them, yet when the state law supplies this deficiency and gives the lien, the court of admiralty will enforce it. This is not enlarging the jurisdiction of the court, but the remedy of the party. It does not authorize a suit in the admiralty on a subject-matter not of admiralty jurisdiction, but only gives to the party a particular proceeding or remedy for the recovery of his debt.

I have thus endeavored to explain and justify my opinion of this case. The unsuccessful party may have an appeal; or he may take his case into the state courts, either by a libel or the ordinary common law proceeding. The libel must be dismissed for want of jurisdiction.